# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TRACTOR AND EQUIPMENT CO.** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 15-5413** |
| | * | |
| **V.** | * | **SECTION "R"** |
| | * | |
| **DUAL TRUCKING AND TRANSPORT, L.L.C.** | * | **JUDGE VANCE** |
| **AND ANTHONY ALFORD** | * | |
| | * | **MAG. NORTH** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF TRACTOR AND EQUIPMENT CO.

**MAY IT PLEASE THE COURT:**

This Memorandum is submitted in support of plaintiff, Tractor & Equipment Co.'s Motion for Summary Judgment against Anthony Alford.

### I. FACTUAL BACKGROUND

This matter arises out of Dual Trucking and Transport, LLC ("Dual Trucking") establishing an open account with Tractor and Equipment Co. ("T&E") for the rental of trucking related equipment in Montana and North Dakota. As a condition to establishing the open account, T&E required that an owner of Dual Trucking execute a Personal Guarantee.

On March 19, 2012, Dual Trucking submitted a standard form Application for Commercial Credit to T&E.[1] On March 20, 2012, T&E Credit Specialist Judy Grooms corresponded to Dual Trucking directing the Personal Guarantee was required to be signed by an owner of Dual Trucking before the open account could be approved.[2]

---

[1] Exhibit A, Application for Commercial Credit
[2] Exhibit B, March 20, 2012 Correspondence to Dual Trucking, Affidavit of Judy Grooms

On March 21, 2012, Dual Trucking submitted the Personal Guarantee executed by Anthony Alford.[3] Based on the executed Personal Guarantee and prior submitted Application for Commercial Credit, T&E approved application for commercial credit submitted by Dual Trucking.[4]

Tractor and Equipment Co. extended a line of credit to Dual Trucking. At some point in 2013, Dual Trucking became delinquent on its T&E credit account and no further payments on the debts were made by Dual Trucking. In total, Dual Trucking failed to pay $292,846.30 in invoices on credit extended to Dual Trucking by Tractor & Equipment under its commercial credit agreement.[5]

## II. PROCEDURAL BACKGROUND

On February 10, 2016, T&E was granted its Motion for Summary Judgment against Dual Trucking in the Montana thirteenth Judicial District Court for Yellowstone, Cause No. DV 13-1526. The Montana court found Dual Trucking owes T&E the total amount of $292,846.30. In addition to the full amount granted in summary judgment, the Montana Court granted T&E attorney's fees in the amount of $30,508.50, court costs of $1,111.55, as well as interest of 18% per annum from October 31, 2013.[6]

Dual Trucking is no longer actively engaged in business, has no employees, and is unable to pay its debts.

---

[3] Exhibit C, Personal Guarantee
[4] Affidavit of Damon Wenz, Affidavit of Judy Grooms
[5] Affidavit of Damon Wenz
[6] Exhibit D, Montana Judgment

## III. LAW AND ARGUMENT

### 1. Summary Judgment Standard

Fed. R. Civ. P. 56(a) states,

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense, on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

If the dispositive issue is one on which the movant will bear the burden of proof at trial, the movant "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.* 939 F.3d 1257,1264-65 (5th Cir. 1991). If the dispositive issue is one which the nonmoving party will bear the burden of proof at trial, then moving party may satisfy its burden by merely pointing out that evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *Celotex Corp v. Catrett*, 447 U.S. 317, 325 (1988). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id* at 324.

In nonjury cases, where the judge is the ultimate finder of facts, the Fifth Circuit suggests a "more lenient standard for summary judgment" is appropriate. *U.S. Fid. & Guar. Co. v. Planters Bank & Trust Co.*, 77 F.3d 863, 865 (5th Cir. 1996). Specifically, at the summary judgment stage of a bench trial, the judge may have "the limited discretion to decide that the same evidence presented to him in a plenary trial, could not possibly lead to a different result." *Id* at 866.

"If there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Id*. "If a trial on the merits will not enhance the court's ability to draw inferences and conclusions," then the court should draw those inferences "without resort to the expense of trial." *In re Placid Oil Co.,* 932 F. 2d 394, 398 (5th Cir. 1991).

**2. Louisiana Surety Law**

"In Louisiana, a contract of guaranty is equivalent to a contract of suretyship." *LBUBS 2004-C8 Derek Drive, L.L.C. v. Gerbino*, No. 13-2264, 2014 WL 2446362, at *5 (W.D. La. May 30, 2014). A suretyship contract is when one party, in agreement with a creditor, agrees to "fulfill the obligation of another upon that failure of the latter to do so." La. Civ. Code art. 3035.

La. Civ. Code art. 3038 provides that in order for a surety to be bound to a creditor the contract between the two must be express and in writing. "The surety's contract need not observe technical formalities, but must contain an absolute expression of intent to be bound." *Pelican State Wholesale Inc. v Mays*, 15 So. 3d 341, 343 (La. App. 2 Cir. 2009).

"The written agreement must expressly contain a promise to pay the debt of another." Ruminations on Suretyship, 57 La. L. Rev. 565, 571.

As noted by this Court in its Order and Reasons, the surety agreement at issue in this matter "clearly identifies the applicant or principal obligor (DTT), the creditor (Tractor and Equipment), and it unambiguously states that Alfords agrees to guarantee and pay the creditor "all monies" due from the principal obligor by reason of "any credit extended" at request of the principal obligor." (R. Doc. 14, p. 9).

A reading of the Personal Guarantee reveals the clear intent of the parties. The heading of the surety contract signed by Alford unmistakably and in bold text states:

**PERSONAL GUARANTEE**
_____ in consideration of :[7]

The language of the Personal Guarantee expressly and unambiguously states:

> The undersigned,_____, in consideration of your giving credit to the aforesaid applicant, jointly and severally guarantee(s) and agree(s) to pay to Tractor & Equipment Co., N C Machinery Co., Machinery Power & Equipment Co., N C Power Systems Co OR Any of their related or affiliated companies all monies which shall become due you from Dual Trucking and Transport, LLC by reason of any credit you extend as herein requested, including late payment charges and all costs of collection and reasonable attorney's fees for recovery of the debt if it is due whether it is incurred by the debtor or guarantor or both.[8]

Within the Personal Guarantee section, Anthony Alford affixed his signature agreeing to be personally bound as a surety to the obligations of Dual Trucking owed to T&E. Alford did not

---

[7] Exhibit C, Personal Guarantee
[8] Exhibit C, Personal Guarantee

affix any corporate capacity to his signature.[9] Nor did the application give Alford an option to affix or distinguish his capacity.

In response to requests for admissions propounded by T&E, pursuant to La Civ. Code art 1838[10], Alford responded that his signature appears to be his, but he could not recall signing the document.[11]

Critically, Alford did not deny his signature, nor has Alford put forth any proof which would support a denial of his signature. In *Hass v. Johnson*, 203 La. 697, 704, (La. 5/17/1943), the Louisiana Supreme Court held that the failure of a defendants to specifically deny signatures on acknowledgments must be considered as an admission.

3. **Intent of Parties**

It is well settled that when the terms of a written contact are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence. In such cases, the meaning or intent of the parties to the contract must be sought within the four corners of the instrument. *Campesi v. Margaret Plantation*, 417 So.2d 1265, 1269 (La.App.Ct.1 Cir.6/29/1989).

La Civ. Code art. 2045 provides that interpretation of a contact is the determination of the common intent of the parties. "When the words of a contact are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La Civ. Code. Art 2046.

---

[9] Exhibit C, Personal Guarantee.
[10] La Civ Code art 1838, provides "A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. In case of a denial, any means of proof may be used to establish that his signature belongs to that party.
[11] Exhibit E, Alford's Responses to Discovery

The Personal Guarantee signed by Alford is a clear expression of his intention to act as surety for the debts of Dual Trucking as a result of credit extended to Dual Trucking by T&E. The language contained in the four corners of the Personal Guarantee satisfies the requirements to be a surety contract, and further, the language leads to no absurd consequences. The creditor and debtor are both identified. It is clear the Personal Guarantee is being given by Alford as an accessory contract to a credit based open account agreement between the creditor-plaintiff T&E and debtor-defendant Dual Trucking.

Based on the unambiguous and clear wording of the Personal Guarantee, which lead to no absurd consequences, the Personal Guarantee, executed by Alford, is an enforceable surety agreement between Alford and T&E.

### 4. Affirmative Defenses of Alford

A review of the Answer (R. Doc. 15) filed by Alford reveals no affirmative defenses raised as to Alford's intent when signing the Personal Guarantee. Nor are the affirmative defenses of error or mistake pleaded by Alford.

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed.R.Civ.P.(8)(c)(1). Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case. *LSREF2 Baron, LLC v. Tauch*, 751 F.3d 394, 398 (5th Cir. 5/7/2014), citing *Morris v. Homco Int'l, Inc.*, 853 F. 2d 337, 342-43 (5th Cir. 1988).

A defendant must plead with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced. *Id*, quoting *Rogers v McDorman*, 521 F.3d 381,

385-86 (5th Cir. 2008). In diversity cases, state substantive law determines what constitutes an affirmative defense. *Id*.

La Code of Civil Procedure Article 1005 provides "The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense." This list of affirmative defenses under the Louisiana Code of Civil Procedure is illustrative and not exhaustive. *Bienvenu v. Allstate Ins. Co.*, 819 So. 2d 1077, 1079 (La. App. 4 Cir. 5/08/02).

Lack of common intent is a vice of consent and is an affirmative defense that must be specifically pleaded. *Campesi v. Margaret Plantation*, 417 So.2d 1265, 1269 (La. App.1 Cir. 6/29/1989).

In answering the Complaint, Alford only raised six brief, general affirmative defenses. R.Doc. 15, p.4). None of Alford's affirmative defenses are specifically pleaded with requisite specificity or factual particularity. Critically, Alford does not plead any affirmative defense pertaining to his intent when executing the Personal Guarantee. Alford failed plead any affirmative defenses related to mistake or error in executing the Personal Guarantee. In the four years since receiving the Personal Guarantee executed by Alford, T&E has not received any notice from Dual Trucking or Alford that the Personal Guarantee was executed in error or by mistake.[12]

Per this Court's Scheduling Order (R.Doc.13), the deadline for parties to amend pleadings was on June 6, 2016. The defendants have filed no amending pleadings asserting any additional

---

[12] Affidavit of Wenz, Affidavit of Grooms

affirmative defenses. As such, the defendant Anthony Alford has failed to assert any affirmative defenses which would raise his intent as a defense to the enforcement of the Personal Guarantee.

As a result of Alford's failure to plead any affirmative defenses related to intent, error, or mistake, as well as reasons asserting the intent of the parties is clear, summary judgment declaring the Personal Guarantee valid and enforceable under Louisiana law is appropriate.

### 5. Analysis of Prior Louisiana Surety Decisions

One case particularly similar, both factually and procedurally, to the matter before this Court, is *Dror International, L.P. et al v. Thundervision LLC et al* 81 So. 3d 182 (La. App. 5 Cir. 12/13/11). In *Dror*, defendant-personal guarantors were found liable for invoices generated under printing contracts. Procedurally *Dror* is similar, as before the guarantors were found liable, the company Thundervision, LLC was adjudged, by a bankruptcy court, to be liable for the invoices. *Id* at 185. As Thundervision was unable to satisfy the judgment, action against the guarantors of Thundervision's debts was instituted in a separate suit. *Id*.

The guarantors and principals of Thundervision, LLC, were ultimately found liable for the invoices, as the guarantors signed standard form printing contracts. *Id* at 186. The standard form printing contracts contained surety agreements, which were labeled "INDIVIDUAL AND PERSONAL GUARANTY," and further stated the "guarantor unconditionally and personally guarantees the dues and punctual payment of the Print on demand of all money which is payable or may become payable by the Publisher to the Printer." *Id* at 186. The guarantors signed the agreements without reference to any representative capacity. *Id*. The La. 5th Cir. found "the evidence clearly shows Smith (a guarantor) signed and intended to sign the guaranty…in his

personal capacity, and thus, is liable for the invoices generated for services provided under the agreement." *Id*.

The claims against Dual Trucking by T&E are parallel to the facts and procedural history of the *Dror* matter. T&E pursued its claims against Dual Trucking in an underlying suit, and has obtained a judgment in its favor and against Dual Trucking for the entire amount claimed owed on the credit account. Dual Trucking has not paid any amount of the outstanding judgment, and is unable to do so[13]. Now, T&E is pursuing enforcement and collection against Dual Trucking's guarantor, Anthony Alford. Like the guarantors in *Dror*, Alford executed the "Personal Guarantee" section of the T&E standard form contract, without referencing to any representative capacity. It is clear that Alford executed the Personal Guarantee and intended to be bound in his personal capacity to T&E.

Prior decisions striking down the validity and enforceability of surety agreements under Louisiana Law are distinguishable from the Personal Guarantee signed by Alford and submitted to T&E.

A review of prior decisions, which have found surety agreements to be unenforceable under Louisiana law, reveal surety agreements have been declared invalid for two reasons. The first is that the signature of the alleged surety does not express intent to be personally bound, i.e. the surety's signature is followed by a corporate title or corporate capacity. The second reason is the surety language is incorporated into the language of the credit agreement, which is different from the stand alone Personal Guarantee contract executed by Alford.

---

[13] Affidavit of Wenz

In *Pelican State Wholesale, Inc. v. Mays*, 15 So. 3d 341, 343 (La. App. 2 Cir. 6/24/09), Mr. Mays, a shareholder of convenience store, completed and signed a standard Pelican form for a new account related to tobacco products offered by Pelican. *Id* at 341-342. The standard Pelican form contained the language, "the below signed personally guarantees all purchased amounts by the business named above." Mr. Mays signed the form with no corporate designation of title. *Id*. The surety language was incorporated within the "new account" form, as in, the language of the surety agreement was inserted within the language of the company credit agreement. Critically, the Pelican State form only had one signature line for both the surety and corporate applicant. The Louisiana Second Circuit Court of Appeals found that signature line and Mr. May's failure to affix a corporate title to his signature created a question of fact as to Mr. May's intent to be bound as personal obligor and reversed the district court's granting of summary judgment against the alleged surety Mr. Mays. *Id* at *344.

The matter before the Court is wholly distinguishable for the *Pelican State Wholesale* matter. The Dual Trucking standard credit application form is an entirely different form than the Pelican form. The Dual Trucking form has clear and distinct separation between the corporate applicant's information and the Personal Guarantee. There are two separate signature bocks, one for the corporate applicant and the second within the Personal Guarantee. There can be no doubt as to the clear intent of the Dual Trucking standard form delineating the corporate credit applicant from its Personal Guarantor.

Similar to *Pelican State Wholesale*, *Pelican Plumbing Supply, Inc. v J.O.H. Const. Inc.,* 653 So. 2d 699, (La. App. 5 Cir. 3/28/95) held that an alleged personal guarantor did not intend to sign in his personal capacity. *Id* at *702. *Pelican Plumbing* concerned a credit agreement which contained the following language, "in consideration of open account, I hereby understand and

agree to above terms. Should it become necessary to place this account for collection, I shall personally obligate myself and my corporation, if any, to pay the entire amount due including service charges…" *Id* at 700. The agreement was signed by Harold Hedingsfelder, vice president of the corporate applicant J.O.H. Contraction. *Id.* Following Mr. Hedingsfelder's signature COMPANY blank was filled in "J.O.H. Const. Co., Inc."

The trial judge found the signature was made in a representative capacity and therefore led to no personal responsibility of the corporation representative. *Id* at *702. "Where the personal or representative nature of a signature is unclear upon examination of the document, parol evidence is admissible to show the parties' intent." *Homer Nat. Bank v. Springlake Farms*, 616 So. 2d 255, 258. (La. App. 2 Cir. 3/31/93). "The capacity in which a party executes a documents is largely a matter of that party's intention as determined from the circumstances surrounding the transaction." *American Bank & Tr. v. Wetland Workover,* 523 So. 2d 942, 945 (La. App. 4 Cir. 4/12/88), *writs denied*, 531 So. 2d 282 and 531 So.2d 283 (La. 1988). On appeal, the decision of the trial judge was affirmed as it was held that Mr. Hedingsfelder did not intend to sign personally. *Id* at 702.

Critically differing from the matter before this Court and *Pelican Plumbing* is that Alford was explicitly directed to sign the Personal Guarantee, while Heidingsfelder in *Pelican Plumbing* was not directed to do so, and had it been pointed out to him he would not have signed the credit application had it been pointed out to him that credit application could be interpreted as a personal guaranty. *Id* at 701.

*Pelican State Wholesale and Pelican Plumbing* contain surety language incorporated within the standard form corporate applicant section, and not entirely separate section for the surety only. Also both *Pelican State Wholesale and Pelican Plumbing* standard forms only contained one

signature blank for both the corporate applicant and the surety. Neither *Pelican State Wholesale and Pelican Plumbing* standard forms contain standalone surety provisions and separate surety signature blanks that were required to be separately executed from the signature of corporate applicant. T&E's standard credit application contains a separate Personal Guarantee agreement with its own surety signature blank.

Finally, *Fleet Fuel, Inc. v. Mynex, Inc.* 924 So.2d 480, (La.App. 2 Cir. 3/8/06) held that the chairman of corporation did not sign the credit application with fuel company in his personal capacity, but rather in his representative capacity. The corporation's name and address were detailed in the section entitled "Guarantors of Payment," and the chairman's signature and his corporate title were present in the section entitled "Corporate Verification." *Id* at 483. The surety language did not precede the signature line. *Id*. The surety language binding the guarantor was printed on the reverse side of the credit application and signature line. *Id*.

Like *Pelican State Wholesale and Pelican Plumbing, Fleet Fuel* is wholly distinguishable from the Personal Guarantee before this Court. On the T&E standard form, the Application for Credit and the Personal Guarantee are both on the same side of the one-page standard form credit application. The Personal Guarantee agreement stands alone as its own separate accessory agreement on the page, as it is demarcated by borders from the rest of the credit application. The Personal Guarantee contains its own signature blank on which Alford affixed his signature as a surety in his individual capacity. Notably, within the Personal Guarantee, there is no blank for the surety-signee to fill in a corporate title, nor does the form request a title from the surety-signee of the Personal Guarantee. Critically, the Credit Application was signed by Dual Trucking Chief Financial Officer Brian Robichaux, while the Personal Guarantee was signed by Anthony Alford, an owner of Dual Trucking, as requested by T&E.

The above cited cases distinguish the careful intent deployed by T&E in ensuring its Personal Guarantees of credit applicants leads to a clear and unambiguous intent between the parties. For these reason, the Personal Guarantee executed by Alford should be declared a valid surety agreement.

**CONCLUSION**

For the reasons explained above, there exists no genuine issue of material fact and summary judgment should be granted in favor of Tractor & Equipment Co. declaring the Personal Guarantee executed by Anthony Alford to be a valid and enforceable surety agreement.

Respectfully submitted;

LAW OFFICE OF CHRISTOPHER H. RIVIERE
A Professional Law Corporation

__s/ Todd M. Magee_____
CHRISTOPHER H. RIVIERE (#11297)
WILLIAM N. ABEL (#33,702)
TODD M. MAGEE (#35415)
103 West Third Street
Thibodaux, LA 70301
Telephone: (985) 447-7440
Facsimile: (985) 447-3233

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2016, I electronically filed the foregoing with the Clerk of the Court using ECF system which sent notification of such filing to the following:

Frederic C. Fondren   ffondren@mfbfirm.com, chrissieleblanc@yahoo.com, cleblanc@mfbfirm.com; and

Roy A. Jefferson , Jr   rjefferson@mfbfirm.com, crome@mfbfirm.com

      __*s/ Todd M. Magee*_____
      TODD M. MAGEE