UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRACTOR AND EQUIPMENT CO. | CIVIL ACTION

VERSUS | NO. 15-5413

DUAL TRUCKING AND TRANSPORT, LLC, AND ANTHONY ALFORD | SECTION: R

**ORDER AND REASONS**

Before the Court are cross motions for summary judgment on the validity of a surety agreement signed by Anthony Alford.[1] In addition, Tractor and Equipment Co. has filed a motion in limine to exclude an affidavit submitted by Alford.[2] Because the Court finds that Alford's intent to be bound as Dual Trucking and Transport, LLC's surety is clear from the plain language of the "Personal Guarantee" agreement, Tractor and Equipment's motion for summary judgment is granted, defendants' corresponding motion is denied, and Tractor and Equipment's motion in limine is denied as moot.

## I. BACKGROUND

This action arises out of Dual Trucking and Transport, LLC's (DTT) alleged default under an open account agreement with Tractor and Equipment Co.[3] The core facts are not in dispute. On March 19, 2012, a DTT employee sent Tractor and Equipment a form application for credit.[4] Tractor and Equipment's application form consists of two parts, first a section requesting information regarding the entity seeking credit, and second, a

---

1 R. Doc. 16; R. Doc. 17.
2 R. Doc. 19.
3 R. Doc. 1 at 1 ¶ 1.
4 R. Doc. 16-3 at 10.

personal guarantee.[5] The day after DTT sent its application, a Tractor and Equipment employee sent a letter to DTT stating as follows:

> Dear Sirs:
>
> In reviewing the application for Credit you submitted, we find the Personal Guarantee portion was not signed. Please have the owner or officer of company [sic] sign the attached application as indicated, fax a copy to me at 406 651 8346 and drop the copy with original signature in the mail to PO Box 20158, Billings MT 59107.
>
> Thank you for your help and consideration.
>
> [Signature Block][6]

Anthony Alford, a 50% owner of DTT,[7] signed the "Personal Guarantee" section of the credit application form supplied by Tractor and Equipment and returned it the following day.[8] The application for credit form Alford signed was identical to the copy DTT submitted on March 19, except that the March 19 copy was, with the exception of the "Personal Guarantee" section, mostly filled-out.[9] It was signed on the line requesting the signature of an owner, principal, or authorized officer or partner of the applicant.[10] By contrast, the form Alford signed had many unfilled blanks.[11] It identified only the applicant's corporate name and address, and it was not signed by a corporate representative.[12]

---

5 *Id.*
6 R. Doc. 16-4 at 3.
7 R. Doc. 16-5 at 1.
8 R. Doc. 16-4 at 4; R. Doc. 18-1.
9 *Compare* R. Doc. 16-3 at 10 *with* R. Doc. 16-4 at 4.
10 *Id.*
11 *Id.*
12 *Id.*

In late 2013, Tractor and Equipment sued DTT and Anthony Alford in Montana state court, alleging that DTT had an unpaid account balance of $292,646.30.[13] Tractor and Equipment also alleged that Alford had personally guaranteed DTT's open account and was therefore jointly liable for the amounts due under its open account agreement.[14] The Montana court dismissed the claims against Alford for lack of personal jurisdiction, and later entered judgment against DTT in the amount of $292,846.30, plus interest, attorney's fees, and costs.[15] After the Montana court dismissed Alford from that litigation, Tractor and Equipment filed this suit seeking a declaratory judgment that Alford's surety contract is valid and enforceable.

The parties have filed cross motions for summary judgment,[16] and corresponding responses[17] and replies.[18] Tractor and Equipment has also filed a motion in limine to exclude an affidavit completed by Alford.[19]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but

---

13 R. Doc. 1 at 3 ¶ 7.
14 *Id*. at 4 ¶ 11.
15 R. Doc. 5-4 at 10; R. Doc. 16-3 at 8-9.
16 R. Doc. 16; R. Doc. 17.
17 R. Doc. 18; R. Doc. 22.
18 R. Doc. 26; R. Doc. 29.
19 R. Doc. 19.

refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See*,

*e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

As noted, the parties do not dispute that Alford signed the "Personal Guarantee" section of a form application for credit and submitted it to Tractor and Equipment. The relevant section—contained in a separate box from the remainder of the form—reads as follows:

**PERSONAL GUARANTEE**

> The undersigned, ____________________, in consideration of your giving credit to the aforesaid applicant, jointly and severally guarantee(s) and agree(s) to pay to TRACTOR & EQUIPMENT CO., N C MACHINERY CO., MACHINERY POWER & EQUIPMENT CO., N C POWER SYSTEMS CO. OR ANY OF THEIR RELATED OR AFFILIATED COMPANIES all monies which shall become due you from Dual Trucking and Transport LLC by reason of any credit you extended as credit you extend as [sic] herein requested, including late payment charges and all costs of collection and reasonable attorney's fee for recovery of the debt if it is due whether it is incurred by the debtor or guarantor or both.[20]

Alford's signature appears directly below this paragraph.[21] Despite this clear language, Alford and DTT argue that the purported guarantee does not bind Alford because: (1) the guarantee applies only to existing debt, not to any debts incurred after the guarantee was signed; (2) the personal guarantee is an invalid surety agreement under Louisiana law, and (3) Alford signed the guarantee in his representative capacity as an officer of DTT,

---

20 R. Doc. 16-4 at 4.

21 *Id.*

rather than his personal capacity, and did not intend to be personally bound to pay DTT's debts. The Court begins by considering Louisiana surety law, and then considers each of defendants' arguments in turn.

In Louisiana, "[a] contract of guaranty is equivalent to a contract of suretyship[, and t]he terms guaranty and suretyship may be used interchangeably." *DROR Int'l, L.P. v. Thundervision, L.L.C.*, 81 So. 3d 182, 185 (La. App. 5 Cir. 2011) (citing *Eclipse Telecommunications Inc. v. Telnet International Corp.*, 800 So. 2d 1009, 1011 (La. App. 5 Cir. 2001)). In a surety contract "a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035. Surety agreements must be express and in writing. La. Civ. Code art. 3038. "The surety's contract need not observe technical formalities, but must contain an absolute expression of intent to be bound." *Fleet Fuel, Inc. v. Mynex, Inc.*, 924 So. 2d 480, 482 (La. App. 2 Cir. 2006).

Surety agreements "are subject to the same rules of interpretation as contracts in general." *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 578 (5th Cir. 2015) (quoting *Ferrell v. S. Cent. Bell Tel. Co.*, 403 So.2d 698, 700 (La. 1981)). "[T]he main goal of contract interpretation under Louisiana law is determining the common intent of the parties." *Franks Inv. Co. v. Union Pac. R. Co.*, 772 F.3d 1037, 1041 (5th Cir. 2014). Accordingly, courts must "give legal effect to all [surety] contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences." *Comar Marine*, 792 F.3d at 578.

In this case, the Court finds that the plain language of the contract evinces "an absolute expression of intent to be bound," *Fleet Fuel*, 924 So. 2d at 482, and the Court

therefore need not look beyond the text of the agreement. Under the bolded, underlined heading reading, "Personal Guarantee"—and in a box separating the surety agreement from the remainder of the document—the paragraph in question clearly identifies the applicant or principal obligor (DTT) and the creditor (Tractor and Equipment).[22] The contract also states Alford's agreement to guarantee and pay the creditor "all monies" due from the principal obligor "by reason of any credit you extended as credit you extend as [sic] herein requested."[23] Although this limiting clause appears to contain a drafting error, the mistake does not undermine the plain meaning of the agreement: DTT is applying for credit, and, if Tractor and Equipment extends DTT credit based on that application, Alford agrees to guarantee DTT's obligations to Tractor and Equipment.

To resist this conclusion, Alford and DTT argue that the guarantee applies only to DTT's existing debt, not to any debts incurred after the guarantee was signed. This argument is based on a strained reading of the limiting clause discussed above. In essence, Alford and DTT argue that when the agreement refers to "credit you *extended*,"[24] it limits the operative effect to past debts. This interpretation fails for several reasons.

First, the Court notes that, contrary to defendants' representations, an agreement binding a surety to future obligations is neither unusual nor suspect. *See* La. Civ. Code art. 3036 ("The principal obligation may be subject to a term or condition, may be presently existing, *or may arise in the future*." (emphasis added)); *Sizeler Prop. Inv'rs, Inc. v. Gordon Jewelry Corp.*, 550 So. 2d 237, 244 (La. App. 4 Cir. 1989) (explaining that "[s]uretyship has historically been given for future obligations in Louisiana."). Second,

---

22 R. Doc. 16-4 at 4.
23 *Id.*
24 *Id.*

defendants' argument ignores that the limiting clause specifically refers to credit as "herein requested." This clear statement of what debts fall under the guarantee outweighs any asserted ambiguity caused by the use of a single past-tense verb. Third, in their myopic focus on the tense of a particular word, defendants ignore the document as a whole. That the guarantee is included as part of an application for credit strongly suggests that it applies to obligations resulting from that application. *See* La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."); *see also Am. Bank & Trust Co. of Houma v. Wetland Workover, Inc.*, 523 So. 2d 942, 945 (La. App. 4 Cir. 1988) ("[T]he mortgage note and the guarantees must be interpreted together and in a manner which will make the loan transaction effective and meaningful."). Fourth, defendants' interpretation violates this Court's mandate to interpret contract clauses so as to give them some effect. *See* La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."). No party has suggested that DTT has any obligations to Tractor and Equipment that predate the March 19, 2012, application for credit. Defendants' attempt to limit the guarantee to past debts therefore "would render it nugatory," and this interpretation must be rejected in favor of one that gives the agreement some effect. *Franks Inv. Co.*, 772 F.3d at 1042.

Defendants' also argue in the alternative that the agreement is wholly invalid. In support, defendants cite the Louisiana Supreme Court's 1889 decision in *Chretien v. Bienvenir*, 6 So. 553 (1889). In that case, the court declared unenforceable a form contract so incomplete that the document contained "nothing defining or expressing any obligation whatsoever." *Id.* at 554. *Chretien* does not, however, stand for the blanket

proposition that all alleged surety contracts with unfilled blanks are invalid. In this case, for the reasons discussed above, the unfilled blanks in the credit application do nothing to obfuscate Alford's clear expression of intent to be bound. *Chretien* therefore does not undermine the Court's finding of a valid surety agreement.

Finally, defendants argue that the personal guarantee is invalid because Alford signed it in his representative capacity as an officer of DTT, rather than in his personal capacity. Alford asserts that he did not intend to be personally obligated for DTT's debts, and submits an affidavit to that effect.[25] This argument is meritless. If Alford signed in a representative capacity on behalf of DTT, then the "personal guarantee" serves only to bind DTT as its own surety. This interpretation renders the guarantee both absurd and worthless. Louisiana courts have rejected such arguments for this reason. *See Veterans Commercial Properties, LLC v. Barry's Flooring, Inc.*, 67 So. 3d 627, 631 (La. App. 5 Cir. 2011) (construing surety agreement as personally binding the signatory where "[t]o construe otherwise would render the guaranty worthless"); *Am. Bank & Trust Co. of Houma*, 523 So. 2d at 945 (finding that sureties signed in personal capacity because "to construe the signatures as indicating that the guarantors executed the guarantees in their corporate capacity, thus binding only the corporation, would render the documents meaningless."); *McKesson Chem. Co. v. Tideland Chem. Co.*, 471 So. 2d 812, 815 (La. App. 3 Cir. 1985) (rejecting personal-capacity argument and stating: "We shall not interpret the letter of guarantee in a way as to render its effect worthless."); *Am. Cas. Co. v. Howard*, 175 So. 2d 355, 356 (La. App. 4 Cir. 1965) (rejecting personal-capacity argument

25 R. Doc. 18-1.

because "[i]f the individuals signed the guarantee for the Agency, the Agency would have guarantee[d] performance of an agreement on which it was already bound.").

To resist the weight of this precedent, defendants cite a handful of Louisiana cases finding an issue of fact as to whether a guarantor signed in his representative or individual capacity. These cases are easily distinguishable. In *Pelican State Wholesale, Inc. v. Mays*, 15 So. 3d 341, 341 (La. App. 2 Cir. 2009), a supplier sued a store owner's widow and children to enforce an alleged personal guarantee. The store owner had signed a "new account" form that included a single sentence purporting to bind the signatory to a personal guarantee. *Id.* The store owner signed the form only once. *Id.* at 341-42. The trial court granted summary judgment in favor of the creditor, but the court of appeals reversed and remanded. *Id.* at 344. In doing so, the appellate court found that in the situation before it—where a single signature was alleged to bind both the corporation and the person—there existed a genuine issue of fact as to whether the store owner intended to sign in his personal capacity. *Id.* Here, by contrast, Alford signed only the separate box under the title "Personal Guarantee."[26] He did not sign on the line designated for a corporate representative.[27] That line had been signed by another DTT officer on DTT's original application for credit.[28] *Pelican State Wholesale*'s reasoning therefore does create an issue of fact in this case.[29]

---

26 R. Doc. 16-4 at 4.

27 *Id.*

28 R. Doc. 16-3 at 10.

29 In *Pelican Plumbing Supply, Inc. v. J.O.H. Const. Co.*, 653 So. 2d 699 (La. App. 5 Cir. 1995), the Louisiana Fifth Circuit upheld a trial court's finding that a similar agreement did not create a valid personal guarantee. This case is inapposite for the same reasons as *Pelican State Wholesale*.

Defendants also cite *Eclipse Telecommunications Inc. v. Telnet Int'l Corp.*, 800 So. 2d 1009 (La. App. 5 Cir. 2001). In that case, the Louisiana Fifth Circuit upheld the trial court's dismissal of Mr. Anderson, an individual defendant, from a suit on an open account. *Id.* at 1010. The "Guarantor Agreement" at issue in *Eclipse*—which was a separate document from the underlying obligation—contained a "section requiring the name, address, telephone number, and social security number of the guarantor." *Id.* at 1011. This section was entirely filled out with information corresponding to Telnet, the corporate defendant:

> The guarantor's name is listed as Telnet and the corporation's address and telephone number are listed. The corporation's tax number is entered in the blank which requests the guarantor's social security number. The document is signed by "Chris Anderson, president." There is no personal information on the document which pertains to Mr. Anderson.

*Id.* at 1011-12. The court in *Eclipse* found these indicia that Mr. Anderson signed in a corporate capacity sufficient to support dismissal. But no similar corporate information is present in Alford's guarantee. DTT is listed as the applicant, but nothing identifies DTT as the guarantor.[30] Accordingly, *Eclipse* does not disturb the Court's reasoning.

For these reasons, the Court finds that the "Personal Guarantee" constitutes a valid surety agreement, and that Alford signed it in his personal capacity. Because the Court concludes that the common intent of the parties to personally bind Alford as surety is made clear and explicit by the words of the contract, the Court does not consider the extrinsic evidence submitted by either party.

---

30 R. Doc. 16-4 at 4.

## IV. CONCLUSION

Tractor & Equipment's motion for summary judgment is GRANTED. Defendants' motion for summary judgment is DENIED. Tractor and Equipment's motion in limine to exclude parol evidence is DENIED AS MOOT. The clerk is directed to enter judgment declaring the personal guarantee executed by Anthony Alford to be a valid and enforceable surety agreement.

New Orleans, Louisiana, this _3rd__ day of April, 2017.

Sarah Vance
_____________________
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE